IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

TODD MASSEY                                            PLAINTIFF

VS.                          CIVIL ACTION NO. 5:11-cv-60(DCB)(JMR)

UNITED STATES OF AMERICA                               DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the Court on defendant United States of America ("the Government")'s Motion to Strike Portions of Expert Report of Nurse Tiana Patterson and Motion for Summary Judgment **(docket entry 30)**.  Having carefully considered the motion and the plaintiff's response, as well as the memoranda and applicable law, and being fully advised in the premises, the Court finds as follows:

This action was filed on April 18, 2011, by Todd Massey, currently an inmate at a federal prison, FCI Oxford in Oxford, Wisconsin.  Massey is represented by counsel.  The Complaint alleges that on April 4, 2007, Massey was incarcerated at FCI Yazoo City in Yazoo City, Mississippi.  Additional allegations are summarized by the Court as follows:  In the week leading up to April 4, 2007, the plaintiff complained several times to medical and nursing staff at FCI Yazoo City that he was having severe abdominal pain, but his complaints were ignored.  On April 4, 2007, the plaintiff was rushed to the emergency department at King's Daughters Hospital ("King's Daughters") in Yazoo City, Mississippi,

where he was diagnosed with suspected perforated viscus, likely a perforated gastroduodenal ulcer.  King's Daughters arranged for his transfer to Mississippi Baptist Medical Center ("Baptist Medical Center") in Jackson, Mississippi.  There, the plaintiff underwent surgical repair of a perforated gastric ulcer and the removal of profuse amounts of fluid from his abdominal cavity.  On April 9, 2007, he was returned to FCI Yazoo City, where the prison staff were indifferent to his complaints of pain and failed to provide him suitable housing.  The Bureau of Prisons subsequently transferred the plaintiff to FCI Gilmer in Glenville, West Virginia.  While there, he was admitted to a local hospital (Stonewall Jackson Memorial Hospital in Weston, West Virginia) for surgical treatment of incisional hernias which had developed following the original operation at Baptist Medical Center.  He continues to suffer from incisional hernias as a result of the operation to address and repair the ruptured gastric ulcer.  Complaint, ¶¶ 7-13.

Massey brings this suit against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.  He claims that the medical and nursing staff at FCI Yazoo City breached the applicable standards of care by:

a.   Ignoring plaintiff's complaints of abdominal pain;

b.   Failing to recognize that Plaintiff was exhibiting signs and symptoms of a gastric ulcer;

c.   Failing to recognize Plaintiff's worsening symptoms

2

which would have indicated that a rupture of the ulcer [was] imminent;

    d.    Failing to administer medications which would have prevented the rupture of the ulcer;

    e.    Delaying Plaintiff's transport to a hospital when it was obvious that the ulcer had ruptured; and

    f.    Other acts of negligence to be proved at trial.

Complaint, ¶ 14 a-f.

He also alleges that the non-medical and non-nursing staff at

FCI Yazoo City were negligent in:

    a.    Ignoring Plaintiff's persistent complaints of worsening abdominal pain and failing to obtain medical attention for him before the gastric ulcer ruptured;

    b.    Ignoring Plaintiff's complaints of pain after he returned to FCI Yazoo from Mississippi Baptist Medical Center and failing to seek medical attention for Plaintiff;

    c.    Failing to provide housing suitable for Plaintiff's recovery from the operation, e.g., housing that did not require Plaintiff to climb stairs; and

    d.    Other acts of negligence to be proved at trial.

Complaint, ¶ 15 a-d.

The original scheduling order set this case for the Court's trial calendar beginning September 24, 2012. Discovery was to be completed by June 1, 2012. Deadlines for designation of the parties' experts were March 1, 2012 for the plaintiff and April 2, 2012 for the defendant. The dispositive motion deadline was June 14, 2012. Case Management Order of October 26, 2011 (docket entry 11).

On February 3, 2012, the defendant filed notices of service of interrogatories and requests for production of documents to the plaintiff.

On February 9, 2012, the plaintiff filed an unopposed motion to extend the expert designation deadlines to April 2, 2012 for the plaintiff and May 2, 2012 for the defendant.  Plaintiff's counsel explained that he had been occupied with an unrelated case during the month of January, and further explained:

> Plaintiff has been treated by multiple physicians in different locations across the country since the incident at issue in this case.  Plaintiff's counsel needs additional time to obtain updated medical records and to consult with Plaintiff's physicians in order to make a proper designation.

Plaintiff's Motion, ¶ 2 (docket entry 14).  The motion was granted.

On March 28, 2012, the plaintiff filed an unopposed motion to continue the trial date and extend the case management deadlines or, in the alternative, extend the expert designation and discovery deadlines by 30 days.  The plaintiff proposed extending the expert designation deadlines to May 2, 2012 for the plaintiff and June 2, 2012 for the defendant, and extending the discovery deadline to July 1, 2012.  Plaintiff's Motion, p. 2 (docket entry 15).  The Court continued the trial to a calendar beginning February 11, 2013, extended the expert designation deadline to June 1, 2012 for the plaintiff and July 1, 2012 for the defendant, extended the discovery deadline to September 1, 2012, and extended the motion deadline to September 15, 2012.

4

On May 14, 2012, the plaintiff filed another unopposed motion to extend the expert designation deadline to July 2, 2012 for the plaintiff and August 1, 2012 for the defendant.  The plaintiff alleged, in part, as follows:

> Due to the conflicts in plaintiff's counsel's schedule, counsel needs additional time to complete plaintiff's expert designation.  The discovery deadlines in two unrelated cases on which the undersigned serves as counsel expire in late May and early June.  Plaintiff's counsel is also scheduled to be out of the country for eight to ten days beginning at the end of May.

Plaintiff's Motion, ¶ 2 (docket entry 16).  The Court granted the requested extensions of deadlines.

On June 27, 2012, the plaintiff filed a fourth motion for extension of deadlines, stating:

> Plaintiff is prepared at this time to designate damages experts and will make his designation of the damages experts before the current July 1, 2012 deadline.

> Plaintiff anticipates designating a medical expert and nursing expert as to liability issues.  Plaintiff needs additional time to obtain signed reports from his liability experts in order to make complete designations.

Plaintiff's Motion, ¶¶ 2-3 (docket entry 17).  The Court extended the plaintiff's expert designation deadline to July 1, 2012, and the defendant's expert designation deadline to August 1, 2012.  The discovery deadline was extended to September 14, 2012, and the motion deadline to September 21, 2012.

On July 1, 2012, the deadline for service of the plaintiff's designation of experts, Massey filed his notice of service of designation of experts.  The Designation names two experts: Dr.

Gregory Fiser (the surgeon who operated on the plaintiff at Baptist Medical Center in Jackson, Mississippi), and Dr. Salvatore LaNasa (the surgeon who operated on the plaintiff at Stonewall Jackson Memorial Hospital in Weston, West Virginia).

Dr. Fiser was designated as an expert "in the field of surgery." The plaintiff stated that he "expects Dr. Fiser to testify as to his findings, diagnoses, prognoses and treatment rendered as reflected in his medical records which have been produced." Plaintiff's Designation of Experts, p. 1 (docket entry 30-2). The plaintiff further stated:

> Specifically, Dr. Fiser will testify that Mr. Massey was transferred to MBMC [Mississippi Baptist Medical Center] for treatment of suspected perforated viscus. Dr. Fiser will testify that he performed a graham patch closure of a perforated gastric ulcer. Dr. Fiser will testify that once he made an incision for the operation, he discovered free air and a massive amount of fluid in the abdominal cavity which was suctioned out. He then discovered a perforation in the anterior portion of the stomach in the antral region. Dr. Fiser will describe the operation in detail as reflected in his operation report included in the records of MBMC. Dr. Fiser is expected to give testimony regarding Mr. Massey's recovery from this operation.
>
> Plaintiff anticipates that Dr. Fiser will testify that the operation on Mr. Massey was necessary to treat the perforated gastric ulcer. Plaintiff further anticipates that the operation was necessitated by the failure of prison staff to address Mr. Massey's complaints of abdominal pain during the days preceding the gastric rupture.

Plaintiff's Designation of Experts, p. 1 (docket entry 30-2).

Dr. LaNasa was also designated as an expert "in the field of surgery," and the plaintiff stated that he expects "Dr. LaNasa to

6

testify as to his findings, diagnoses, prognoses and treatment rendered as reflected in his medical records which have been produced." Plaintiff's Designation of Experts, p. 2. The plaintiff further stated:

> Dr. LaNasa is expected to testify as to the details of the surgical procedure and his specific findings during the procedure as detailed in the operative report included in the SJMH [Stonewall Jackson Memorial Hospital] records. Dr. LaNasa is expected to give testimony regarding Mr. Massey's recovery from this operation.
>
> Plaintiff expects Dr. LaNasa to testify that the surgical repair of the incisional hernias was medically necessary. Plaintiff also expects Dr. LaNasa to testify that the incisional hernias were complications of and resulted from the surgical gastric rupture repair performed by Dr. Fiser at MBMC as detailed above.

Plaintiff's Designation of Experts, p. 2 (docket entry 30-2).

The plaintiff also stated, as to both Dr. Fiser and Dr. LaNasa, that their "testimony will be based on [their] education, training, professional experience, personal examination and treatment of Mr. Massey, and [their] review of the medical records," and that their "testimony will be to a reasonable degree of medical probability." Plaintiff's Designation of Experts, pp. 1-2 (docket entry 30-2).

The plaintiff further stated that he

> ... reserves the right to call any other medical provider identified in his medical records to testify in accordance with the records as to any findings, diagnoses, prognoses or treatment rendered to Mr. Massey.
>
> Plaintiff has not retained or specially employed the above named medical providers to give expert testimony,

but Plaintiff does expect to call them to offer expert
opinions at trial.  Accordingly, plaintiff designates the
providers pursuant to Local Rule 26(a)(2)(D).

Plaintiff reserves the right to call any expert
designated by the defendant.

Plaintiff reserves the right to call any expert necessary
to rebut the testimony of defendant's experts.

Plaintiff's Designation of Experts, p. 2 (docket entry 30-2).

On July 23, 2012, twenty-two days after the deadline for
designation of the plaintiff's experts, the plaintiff served a
Supplemental Designation of Experts on the defendant, naming Tiana
Patterson, R.N., as "an expert in the field of nursing."  The
supplemental designation states that "Ms. Patterson has reviewed
plaintiff's medical records and will testify that defendant's
nursing staff at FCI Yazoo City breached the applicable standard of
care in treatment rendered to plaintiff as set forth in her report
attached hereto."  Plaintiff's Supplemental Designation of Experts
(docket entry 30-3).  Attached to the Supplemental Designation is
a Report of Nurse Patterson in which she concludes:

Had Mr. Massey's original complaint of "severe stomach
pain" for "21 days" been addressed during his original
visit to medical on March 27th, appropriate tests could
have been ordered in a timely manner which could have
prevented Mr. Massey from enduring the pain and multiple
surgeries which transpired.  The most common cause of
gastric ulcers, which Mr. Massey did indeed have present,
is an infection of the stomach by bacteria caused
*Helicobacter pylori (H. pylori)*.  The standard treatment
uses different combinations of the following medications
for 5-14 days.

1.  Two different antibiotics such as clarithromycin,
amoxicillin, tetracycline or Flagyl.

     2.   Proton pump inhibitors such as Prilosec, Prevacid or Nexium.

     3.   Bismuth (the main ingredient in Pepto Bismol) may be added to help kill the bacteria.

    Had Mr. Massey been tested for H. pylori on March 27, 2007, treatment could have been instituted which could have prevented the subsequent perforation.

Report of Tiana Patterson, R.N., pp. 1-2 (docket entry 30-4).

On August 7, 2012, the United States filed a motion to compel plaintiff's responses to written discovery propounded by the defendant. The defendant advised that it had propounded its first set of interrogatories and requests for production of documents on the plaintiff on February 3, 2012, but that plaintiff had not responded to any of the written discovery despite several extensions agreed to by the United States. Defendant's Memorandum, ¶ 1 (docket entry 20). The defendant also stated:

On May 9, 2012, Defendant inquired as to the status of the past due discovery responses, and Plaintiff indicated that the United States would have the responses within fourteen (14) days of that date. 5/9/12 E-mail, Ex. 1. Again on June 26, 2012, Plaintiff promised that the overdue responses were forthcoming and would be provided to the United States within days. 6/26/12 E-mail, Ex. 2. On July 18, 2012, Defendant sent an e-mail [to] Plaintiff's counsel regarding the status of Plaintiff's discovery responses to Interrogatories and Request for Production of Documents, and requesting that Plaintiff provide the responses no later than July 30, 2012 or a Motion to Compel Discovery would be filed. 7/18/12 E-mail, Ex. 3. Plaintiff then requested to have until Thursday, August 2, 2012, to provide the discovery responses. 7/30/12 E-mail, Ex. 4.

Plaintiff did not produce the discovery responses by Thursday, August 2, 2012. The United States provided Plaintiff's counsel with a good faith certificate to

complete to accompany the motion to compel.  8/3/12 E-
mail, Ex. 5.  To date, Plaintiff's counsel has not
responded to the United States' request to produce the
discovery or execute the good faith certificate.

Defendant's Memorandum, ¶¶ 2-3.

Also on August 7, 2012, the United States filed a motion to
take the plaintiff's deposition, the plaintiff still being in
custody and located at the Federal Correctional Institution in
Pollock, Louisiana.  Counsel for the Government noted that she had
requested deposition dates from plaintiff's counsel and was
awaiting a response.  Motion, p. 1 (docket entry 21).  The Court
granted the motion.

On August 21, 2012, the Government filed a motion to extend
the expert, discovery and motion deadlines based, <u>inter alia</u>, on
the fact that "Plaintiff has yet to respond to the Interrogatories
and Request for Production of Documents propounded by Defendant."
Motion, ¶ 2 (docket entry 23).  The Government requested that the
discovery deadline be extended to October 19, 2012, the defendant's
expert designation deadline be extended to September 21, 2012, and
the motion deadline be extended to October 26, 2012.[1]

On August 27, 2012, the Government noticed the deposition of
Dr. Gregory Fiser (the surgeon who operated on the plaintiff at
Baptist Medical Center) for September 13, 2012.

On September 4, 2012, the plaintiff filed a response to the

---

[1] The Government did not seek an extension of the
plaintiff's expert designation deadline.

Government's August 7, 2012, motion to compel, stating that he did not oppose the motion, but requesting ten days to serve his discovery responses.  That same day, the plaintiff filed a response to the Government's August 21, 2012, motion to extend deadlines, requesting that the Court grant the relief sought by the Government.[2]  The Court granted the motion to compel as unopposed and ordered the plaintiff to serve his discovery responses by September 17, 2012.  The Court also granted the motion to extend deadlines as follows: defendant's expert designation deadline – September 21, 2012; discovery deadline – October 19, 2012; motion deadline – October 26, 2012; trial date - calendar beginning June 3, 2013.  On September 17, 2012, the plaintiff filed a Notice of Service of Plaintiff's Responses to Defendant's First Requests for Production of Documents (docket entry 29).

The deposition of Dr. Fiser was taken on September 13, 2012.  Dr. Fiser testified that he saw the plaintiff on April 5, 2007.  Fiser Deposition, page 7 (docket entry 30-5).  He testified that the plaintiff had previously had a CT scan done at another hospital, which showed intraperitoneal air.  Id.  He concluded that the plaintiff had a probable perforated viscus, most likely his stomach.  Id. at 8.  Dr. Fiser testified that he felt that the perforation was most likely in the plaintiff's stomach because of

---

[2] The plaintiff did not seek an extension of the plaintiff's expert designation deadline.

11

the patient's age and demographics.  Id.  He determined that surgery was necessary.  Id. at 9.  During the surgery, Dr. Fiser found that the plaintiff had a perforated gastric ulcer.  Id.

The doctor explained that a gastric ulcer is essentially the same as a peptic ulcer, which is caused by either acid, bacteria, or medications in the stomach that create an erosion of the lining of the stomach.  Id. at 10.  Peptic ulcer is common, and it may be asymptomatic or be marked by a gamut of symptoms including but not limited to dull pain, nausea, or vomiting.  Id. at 11.  Dr. Fiser testified that he did not determine the cause of the plaintiff's peptic (or gastric) ulcer.  Id. at 12.

Dr. Fiser also explained that an ulcer perforates because

the ulcer erodes through the lining.  And essentially, once it erodes through the full thickness of the stomach, then it opens up into the abdominal cavity, and that's a perforation.  So it goes through the whole layers, all the layers of the stomach or duodenum.

Id. at 13.  During Dr. Fiser's deposition, the following colloquy took place:

Q.  Do you have an opinion that the surgery that was - that you performed on Mr. Massey was necessitated by any care provided by the Bureau of Prisons?

A.  I really don't have any opinion there.  I don't - talking about any opinion as to the - meaning the problem caused by?

Q.  Yes.

A.  No.  I have no opinion there.

Id. at 17-18.

On September 21, 2012, the defendant filed the present motion to strike portions of the expert report of Nurse Tiana Patterson, and for summary judgment.  The Government contends that Nurse Patterson is not qualified to render an opinion regarding medical causation in this case, that such opinion should be stricken from her report, and that she should not be allowed to testify as to medical causation at trial.[3]

Since this action is brought pursuant to the FTCA, the Court applies the substantive law of the state where the negligent act or omission occurred.  See Richards v. United States, 369 U.S. 1, 11 (1962).  In a Mississippi medical malpractice action, the plaintiff must establish that: (1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant's breach of duty was a proximate cause of the plaintiff's injury; and (4) the plaintiff was injured as a result.  Vaughn v. Miss. Baptist Med. Ctr., 20 So.3d 645, 650 (Miss. 2009).  Mississippi law requires that a plaintiff must present expert testimony in a medical malpractice suit "to identify and articulate the requisite standard that was

---

[3] Simultaneously with its motion to strike and for summary judgment, the Government filed a motion to stay proceedings, including its designation of experts deadline, the discovery deadline, and all other deadlines in this case (docket entry 32). Chief Magistrate Judge John M. Roper granted the motion pending disposition of the Government's motion to strike and for summary judgment.  Text Order of January 11, 2013.

not complied with" and to "establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." Hubbard v. Wansley, 954 So.2d 951, 957 (Miss. 2007).

In Richardson v. Methodist Hospital of Hattiesburg, Inc., 807 So.2d 1244 (Miss. 2002), the Mississippi Supreme Court held that a qualified nurse may "testify concerning the appropriate standard of nursing care and the deviations from that standard." Id. at 1246. However, a nurse is not qualified to testify concerning the causal nexus between those deviations and the plaintiff's suffering and subsequent death. Id. at 1247-48.

In Vaughn, 20 So.3d 645 (Miss. 2009), the Mississippi Supreme Court found that Richardson "explicitly held that a nurse cannot testify as to cause of death," and that "Richardson should be interpreted as having made impermissible any testimony from a nursing expert on diagnostic impressions, because nurses are not qualified to make medical diagnoses or attest to the causes of illness." Vaughn, 20 So.2d at 652. Therefore, in such context, "nurses cannot testify as to medical causation." Id. The court explained that its holding logically followed from the fact that "medical diagnosis is outside a nurse's scope of practice," and that its holding was "in keeping with the majority rule that nursing experts cannot opine as to medical causation and are unable to establish the necessary element of proximate cause." Id.

In response to the defendant's motion, the plaintiff

14

recognizes that Nurse Patterson cannot testify as to medical causation, and concedes that the portions of her report addressing medical causation should be stricken.  Plaintiff's Memorandum, p. 2 (docket entry 39)(plaintiff "concedes that Ms. Patterson cannot testify that Plaintiff would not have suffered a perforation had treatment been timely instituted").

The Government also moves for summary judgment, on grounds that because Nurse Patterson is the only witness offered by the plaintiff as to medical causation, the plaintiff cannot establish this element of his medical malpractice claim.  In response to the motion for summary judgment, the plaintiff contends that "testimony by Plaintiff's treating physician Dr. Fiser as well as anticipated testimony of his treating physician Dr. Natal[4] establishes the causal connection between the prison staff's substandard care and Mr. Massey's injury."  Plaintiff's Memorandum, p. 2 (docket entry 39).  The plaintiff adds:

> According to Ms. Patterson, if the prison staff had not ignored Mr. Massey's complaints of severe stomach pain, his peptic ulcer could have been treated by administration of antibiotics and proton pump inhibitors. Indeed, the prison staff physician Dr. Norma Natal began such a course of treatment once she apparently became aware of Mr. Massey's symptoms on April 3, 2007. Plaintiff has not had the opportunity to obtain the deposition testimony of Dr. Natal.  It is anticipated that Dr. Natal will confirm that Mr. Massey was suffering from a peptic ulcer as of March 27, 2007.  It is anticipated that Dr. Natal will testify that she would

---

[4] Dr. Norma Natal was a prison staff physician who treated the plaintiff at FCC Yazoo City.

15

have begun Mr. Massey's treatment via medication earlier
had she been aware of his complaints of severe stomach
pain.

Dr. Fiser's testimony confirms that Plaintiff was
suffering from a peptic ulcer as of March 27, 2007.  The
ulcer and the Plaintiff's complaints of pain went
unaddressed by the prison staff until April 3, 2007 when
Dr. Natal began treatment.  Unfortunately for Plaintiff,
treatment began too late to prevent the rupture which
required repair by Dr. Fiser.  The testimony of Dr. Fiser
and the anticipated testimony of Dr. Natal establish
proximate cause between the prison staff's failure to
address Mr. Massey's symptoms and the progression of his
peptic ulcer disease to the point of gastric rupture.

Plaintiff's Memorandum, pp. 3-4 (footnotes omitted).  The plaintiff
also filed a supplemental response in which he requests the Court
to defer ruling on the summary judgment motion and allow him to
take the deposition of Dr. Natal.[5]   Plaintiff's Supplemental
Response (docket entry 38).

Summary judgment is warranted when the evidence reveals that
no genuine dispute exists regarding any material fact and the
moving party is entitled to judgment as a matter of law.
Fed.R.Civ.P. 56(a).  A material fact is a fact that is identified
by applicable substantive law as critical to the outcome of the
suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
To be genuine the dispute regarding a material fact must be

---

[5] The Court considers the plaintiff's Supplemental Response
as a Rule 56(d) motion.  See Washington v. Allstate Ins. Co., 901
F.2d 1281, 1285 (5th Cir. 1990)(noting that an "'equivalent
statement, preferably in writing'" can be considered a Rule 56(d)
motion)(quoting Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th
Cir. 1986).

supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Id.  The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In response to such a showing, the nonmoving party must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating the existence of genuine issues of material fact that must be resolved at trial.  Id. at 324.

Pursuant to Fed.R.Civ.P. 56(d) (formerly Rule 56(f)), the nonmoving party can obtain a continuance of a motion for summary judgment in order to obtain further discovery, provided he "indicate[s] to the court by some statement, preferably in writing (but not necessarily in the form of an affidavit), why he needs additional discovery and how the additional discovery will create a genuine issue of material fact."  Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1442 (5th Cir. 1993)(emphasis in original).

Rule 56(d) functions as a safe harbor to insure that summary judgment is not granted prematurely or improvidently .  See Union City Barge Line v. Union Carbide Corp., 823 F.2d 129, 136 (5th Cir. 1987).  Usually, it is invoked when the party opposing summary judgment claims that it has not had sufficient time for discovery,

17

or that relevant facts are in the control of the party moving for summary judgment. Id. Rule 56(d) motions are "broadly favored and should be liberally granted." Culwell v. City of Fort Worth, 468 F.3d 868, 871 (5th Cir. 2006)(citation omitted); see also Union City Barge Line, 823 F.2d at 136 ("Given the precautionary nature of the rule, these requests ordinarily are treated and reviewed liberally. Technical, rigid scrutiny of a Rule [56(d)] motion is inappropriate.").

However, it is not sufficient for the party opposing summary judgment merely to allege that discovery is not complete, or that it will produce needed but unspecified facts. Washington v. Allstate Ins. Co., 901 F.2d 1281, 1285 (5th Cir. 1990)("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.") (citations omitted).

> To obtain a Rule [56(d)] continuance, the nonmovant must present specific facts explaining his inability to make a substantive response as required by Rule 56(e) and by specifically demonstrating "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." .... The nonmovant may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts. ...

Id. (citations omitted).   A nonmovant in not entitled to a

18

continuance if he "fail[s] to explain what discovery [he] did have, why it was inadequate, and what [he] expected to learn from further discovery" and gives only "vague assertions of the need for additional discovery." Bauer v. Albemarle Corp., 169 F.3d 962, 968 (5th Cir. 1999)(internal quotation marks and citations omitted).

In this case, the plaintiff has specified reasons why he cannot present facts essential to justify his opposition to the defendant's summary judgment motion, and he has provided more than unspecified facts or vague assertions about the evidence he expects to find if the Court grants a continuance and allows the deposition of Dr. Natal. He has shown that if the discovery is allowed, and the deposition yields the evidence he expects, this proof could raise a genuine issue of material fact regarding causation.

In his Declaration, plaintiff's counsel states that it is his "good faith belief that Dr. Natal's anticipated testimony is relevant to the proximate cause issue raised in the Government's motion, and Dr. Natal's deposition is necessary to fully address the medical causation issue argued by the Government." Declaration of James M. Priest, Jr., ¶ 8 (docket entry 38-2). Although the Declaration itself does not provide the required specificity, this deficiency is not fatal because the plaintiff's response and memorandum provide more substantive explanations. See Arters v. Univision Radio Broad. TX, L.P., 2009 WL 1313285, *8 n.19 (N.D. Tex. May 12, 2009)(plaintiff's identification of genuine issue of

material fact and need for discovery justified continuance although
such justification was contained in plaintiff's brief, not in the
affidavit).

The plaintiff contends that if he is allowed to take the
deposition of Dr. Natal, "it is anticipated that Dr. Natal will
testify that she would have begun Mr. Massey's treatment via
medication earlier had she been aware of his complaints of severe
stomach pain," and that "[t]he testimony of Dr. Fiser and the
anticipated testimony of Dr. Natal establish proximate cause
between the prison staff's failure to address Mr. Massey's symptoms
and the progression of his peptic ulcer disease to the point of
gastric rupture." Plaintiff's Response, ¶¶ 4-5 (docket entry 36).
The plaintiff also states, in his Memorandum:

> It is anticipated that Dr. Natal will confirm that Mr.
> Massey was suffering from a peptic ulcer as of March 27,
> 2007. It is anticipated that Dr. Natal will testify that
> she would have begun Mr. Massey's treatment via
> medication earlier had she been aware of his complaints
> of severe stomach pain.
>
> Dr. Fiser's testimony confirms that Plaintiff was
> suffering from a peptic ulcer as of March 27, 2007. The
> ulcer and the Plaintiff's complaints of pain went
> unaddressed by the prison staff until April 3, 2007 when
> Dr. Natal began treatment. Unfortunately for Plaintiff,
> treatment began too late to prevent the rupture which
> required repair by Dr. Fiser. The testimony of Dr. Fiser
> and the anticipated testimony of Dr. Natal establish
> proximate cause between the prison staff's failure to
> address Mr. Massey's symptoms and the progression of his
> peptic ulcer disease to the point of gastric rupture.

Plaintiff's Memorandum, pp. 3-4 (docket entry 39).

In its Reply Memorandum, the Government argues that the Court

20

should deny the plaintiff's request and grant summary judgment for the following reasons:

> (1) Plaintiff did not designate Dr. Natal pursuant to Uniform Local Rule 26(a)(2)(D);
>
> (2) Plaintiff could have secured Dr. Natal's deposition over the course of the eleven months that elapsed between the Case Management Order and the filing of the United States' Motion, and thus has not acted diligently; and
>
> (3) even assuming Plaintiff could depose Dr. Natal and obtain the testimony he claims he would obtain, it still would not create a genuine issue of material fact as to the issue of causation.

Government's Reply, p. 1 (docket entry 42).

Rule 26 of the Federal Rules of Civil Procedure requires that a party disclose to the other parties the identity of any expert witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.  Fed.R.Civ.P. 26(a)(2)(A).  If a party fails to designate an expert witness, Rule 37 prohibits the party from using that witness to supply evidence at a motion, hearing, or trial unless the failure was substantially justified or harmless.  Fed.R.Civ.P. 37(c)(1).

Local Uniform Civil Rule 26 provides, in part:

> **(2) Expert Witnesses**.  A party must make full and complete disclosure as required by FED.R.CIV.P 26(a)(2) and L.U.CIV.R. 26(a)(2)(D) no later than the time specified in the case management order.  Absent a finding of just cause, failure to make full expert disclosures by the expert designation deadline is grounds for prohibiting introduction of that evidence at trial.
>
> . . .
>
> **(B)** An attempt to designate an expert without

> providing full disclosure information as
> required by this rule will not be considered a
> timely expert designation and may be stricken
> upon proper motion or sua sponte by the court.
>
> **(C)** Discovery regarding experts must be completed
> within the discovery period.  The court will
> allow the subsequent designation or discovery
> of expert witnesses only upon a showing of
> good cause.
>
> **(D)** A party must designate physicians and other
> witnesses who are not retained or specially
> employed to provide expert testimony but are
> expected to be called to offer expert opinions
> at trial.  No written report is required from
> such witnesses, but the party must disclose
> the subject matter on which the witness is
> expected to present evidence under FED.R.EVID.
> 702, 703 or 705, and a summary of the facts
> and opinions to which the witness is expected
> to testify.  The party must also supplement
> initial disclosures.

L.U.Civ.R 26(a)(2)(B)-(D).

The Fifth Circuit Court of Appeals has identified four factors
that a district court should consider in exercising its discretion
whether to exclude experts not properly designated: (1) the
explanation for the failure to identify the witness; (2) the
importance of the testimony; (3) potential prejudice in allowing
the testimony; and (4) the availability of a continuance to cure
such prejudice.  Geiserman v. MacDonald, 893 F.2d 787, 791 (5th Cir.
1990).

The plaintiff merely states that he "has not had the
opportunity to obtain the deposition testimony of Dr. Natal."
Plaintiff's Memorandum, p. 3 (docket entry 39).  He fails to show

why he has not had the opportunity, and why he did not depose Dr.
Natal and/or designate her as an expert witness during the eleven
months allowed by the Court for discovery.  The plaintiff did not
act diligently; therefore, the first factor weighs against the
plaintiff.

The second factor is the importance of the expected testimony.
Assuming the deposition produces the testimony the plaintiff
expects, this would be the only evidence available to the plaintiff
to prove the element of causation.  Thus, the second factor weighs
in favor of the plaintiff.  Although the defendant contends that
the testimony the plaintiff expects to obtain would not create a
genuine issue of material fact as to the issue of causation, the
Court finds that the plaintiff has sufficiently shown both the
anticipated testimony and how it would create a genuine issue of
material fact.

The Court finds that the potential prejudice to the defendant
in allowing the deposition is slight.  The discovery deadline in
this case has been stayed; thus, the Court can allow the deposition
of Dr. Natal as a treating physician to take place within the
discovery period.  As a treating physician, Dr. Natal is allowed

> to develop opinions regarding causation and prognosis
> during the ordinary course of an examination.  To assume
> otherwise is a limiting perspective, which narrows the
> role of a treating physician.  Instead, to properly treat
> and diagnose a patient, the doctor needs to understand
> the cause of a patient's injuries.

Martin v. CSX Transp., Inc., 215 F.R.D. 554, 557 (S.D. Ind.

23

2003)(citation omitted).  <u>See also</u> <u>Mackey v. Burlington N. Santa Fe</u>
<u>Ry. Co.</u>, 2006 WL 3512958 at *2 (D. Kan. Nov. 29, 2006)(permitting
a treating physician to testify as to causation "to the limited
extent that opinions about the cause of an injury are a necessary
part of the patient's treatment" (citation omitted)).  Dr. Natal's
testimony must be so limited in this case; therefore, the prejudice
factor favors allowing the out-of-time designation of Dr. Natal and
the taking of her deposition.

Furthermore, any potential prejudice to the defendant can be
cured by a continuance.  The Fifth Circuit has emphasized that a
continuance is "the preferred means of dealing with a party's
attempt to designate a witness out of time or offer new evidence,"
especially when coupled with the court's discretion to determine
whether any sanctions are appropriate.  <u>Bradley v. United States</u>,
866 F.2d 120, 127 n.11 (5th Cir. 1989).  This factor also favors
allowing the deposition and the out-of-time designation.

The Court finds that balancing the factors favors the
plaintiff, if only slightly.  The plaintiff shall be allowed to
designate Dr. Norma Natal as an expert for purposes of Rule
26(a)(2)(A) and Local Uniform Rules 26(a)(2) and 26(a)(2)(C),
inasmuch as he has shown good cause.  The plaintiff shall also be
allowed to take the deposition of Dr. Natal for purposes of Rule
56(d).

The defendant's motion to strike shall be granted.  The motion

for summary judgment shall be denied without prejudice.

This matter is referred to Magistrate Judge Michael T. Parker for purposes of lifting the stay, establishing new deadlines including a deadline for taking the deposition of Dr. Natal, a deadline for designation of Dr. Natal as a treating physician expert, and a new dispositive motion deadline, and entering a new scheduling order.  The Court recognizes that additional discovery by the defendant may be necessary depending on the outcome of Dr. Natal's deposition.  Accordingly,

IT IS HEREBY ORDERED that the defendant United States of America's Motion to Strike Portions of Expert Report of Nurse Tiana Patterson **(docket entry 30)** is GRANTED as set forth in this opinion;

FURTHER ORDERED that the defendant United States of America's Motion for Summary Judgment **(docket entry 30)** is DENIED WITHOUT PREJUDICE as set forth in this opinion.

SO ORDERED, this the 14th day of February, 2013.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE