```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    WESTERN DIVISION


TODD MASSEY                                        PLAINTIFF

VS.                     CIVIL ACTION NO. 5:11-cv-60(DCB)(MTP)

UNITED STATES OF AMERICA                           DEFENDANT
```

MEMORANDUM OPINION AND ORDER

This cause is before the Court on defendant United States of America ("United States" or "Government")'s Motion for Summary Judgment (Renewed) **(docket entry 56)**. Having carefully considered the motion and the plaintiff's response, as well as the memoranda and applicable law, and being fully advised in the premises, the Court finds as follows:

This action was filed on April 18, 2011, by Todd Massey, currently an inmate at a federal prison, FCI Oxford in Oxford, Wisconsin. Massey is represented by counsel. In the following paragraph, the Court summarizes the plaintiff's allegations as set forth in his Complaint:

On April 4, 2007, Massey was incarcerated at FCI Yazoo City in Yazoo City, Mississippi. In the week leading up to April 4, 2007, the plaintiff complained several times to medical and nursing staff at FCI Yazoo City that he was having severe abdominal pain, but his complaints were ignored. On April 4, 2007, the plaintiff was rushed to the emergency department at King's Daughters Hospital ("King's Daughters") in Yazoo City, Mississippi, where he was

diagnosed with suspected perforated viscus, likely a perforated gastroduodenal ulcer.  King's Daughters arranged for his transfer to Mississippi Baptist Medical Center ("Baptist Medical Center") in Jackson, Mississippi.  There, the plaintiff underwent surgical repair of a perforated gastric ulcer and the removal of profuse amounts of fluid from his abdominal cavity.  On April 9, 2007, he was returned to FCI Yazoo City, where the prison staff (according to the plaintiff) were indifferent to his complaints of pain and failed to provide him suitable housing.  The Bureau of Prisons subsequently transferred the plaintiff to FCI Gilmer in Glenville, West Virginia.  While there, he was admitted to a local hospital (Stonewall Jackson Memorial Hospital in Weston, West Virginia) for surgical treatment of incisional hernias which had developed following the original operation at Baptist Medical Center.  He continues to suffer from incisional hernias as a result of the operation to address and repair the ruptured gastric ulcer. Complaint, ¶¶ 7-13.

   Massey brings this suit against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.  He claims that the medical and nursing staff at FCI Yazoo City breached the applicable standards of care by:

   a.   Ignoring plaintiff's complaints of abdominal pain;

   b.   Failing to recognize that Plaintiff was exhibiting signs and symptoms of a gastric ulcer;

   c.   Failing to recognize Plaintiff's worsening symptoms

        which would have indicated that a rupture of the ulcer [was] imminent;

   d.   Failing to administer medications which would have prevented the rupture of the ulcer;

   e.   Delaying Plaintiff's transport to a hospital when it was obvious that the ulcer had ruptured; and

   f.   Other acts of negligence to be proved at trial.

Complaint, ¶ 14 a-f.

He also alleges that the non-medical and non-nursing staff at FCI Yazoo City were negligent in:

   a.   Ignoring Plaintiff's persistent complaints of worsening abdominal pain and failing to obtain medical attention for him before the gastric ulcer ruptured;

   b.   Ignoring Plaintiff's complaints of pain after he returned to FCI Yazoo from Mississippi Baptist Medical Center and failing to seek medical attention for Plaintiff;

   c.   Failing to provide housing suitable for Plaintiff's recovery from the operation, e.g., housing that did not require Plaintiff to climb stairs; and

   d.   Other acts of negligence to be proved at trial.

Complaint, ¶ 15 a-d.

This Court previously addressed a motion by the Government to strike portions of the expert report of Nurse Tiana Patterson, and for summary judgment. The Government contended that Nurse Patterson was not qualified to render an opinion regarding medical causation in this case, that such opinion should be stricken from her report, and that she should not be allowed to testify as to medical causation at trial.

In its Memorandum Opinion and Order, the Court applied the substantive law of Mississippi, which provides that in a Mississippi medical malpractice action, the plaintiff must establish that: (1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant's breach of duty was a proximate cause of the plaintiff's injury; and (4) the plaintiff was injured as a result. Vaughn v. Miss. Baptist Med. Ctr., 20 So.3d 645, 650 (Miss. 2009). Mississippi law requires that a plaintiff must present expert testimony in a medical malpractice suit "to identify and articulate the requisite standard that was not complied with" and to "establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." Hubbard v. Wansley, 954 So.2d 951, 957 (Miss. 2007).

In response to the defendant's motion, the plaintiff recognized that Nurse Patterson cannot testify as to medical causation, and conceded that the portions of her report addressing medical causation should be stricken. See Vaughn, 20 So.3d at 652 ("nursing experts cannot opine as to medical causation and are unable to establish the necessary element of proximate cause"). The defendant's motion to strike was therefore granted.

As for the Government's prior motion for summary judgment, the Government argued that because Nurse Patterson was the only witness

offered by the plaintiff as to medical causation, the plaintiff could not establish the proximate cause element of his medical malpractice claim.  In response to the motion for summary judgment, the plaintiff contended that "testimony by Plaintiff's treating physician Dr. [H. Gregory] Fiser as well as anticipated testimony of his treating physician Dr. [Norma] Natal establishes the causal connection between the prison staff's substandard care and Mr. Massey's injury."  Plaintiff's Memorandum, p. 2 (docket entry 39). The plaintiff also filed a supplemental response in which he requested the Court to defer ruling on the summary judgment motion and allow him to take the deposition of Dr. Natal.  Plaintiff's Supplemental Response (docket entry 38).  The Court considered the plaintiff's Supplemental Response as a Rule 56(d) motion, and found that the plaintiff should be allowed to designate Dr. Natal as an expert for purposes of Rule 26(a)(2)(A) and Local Uniform Rules 26(a)(2) and 26(a)(2)(C), inasmuch as he had shown good cause.  The Court also allowed the plaintiff to take the deposition of Dr. Natal for purposes of Rule 56(d).  The Government's prior motion for summary judgment was denied without prejudice.  The plaintiff took Dr. Natal's deposition and supplemented his Designation of Experts.  The defendant then filed the motion for summary judgment presently before this Court.

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the

5

moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). To be genuine the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  <u>Id</u>.  The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  In response to such a showing, the nonmoving party must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating the existence of genuine issues of material fact that must be resolved at trial.  <u>Id</u>. at 324.

 The plaintiff anticipated that Dr. Natal would testify that if she had seen him earlier, on March 27, 2007, she would have provided him the same treatment that she provided on April 3, 2007, when she did in fact see him.  The plaintiff's theory in this case is that if he had received that treatment on March 27, 2007, his peptic ulcer would not have ruptured.

 Dr. Natal testified that she saw the plaintiff on April 3, 2007, for complaints of nausea, vomiting and right upper quadrant

pain with a pain level 5 on a scale of 0 to 10. Deposition of Dr. Norma Natal ("Natal Depo.") 11:2-12. Dr. Natal examined the plaintiff and noted that he most probably had abdominal pain secondary to gallbladder disease based on the location of the pain. Natal Depo. 11:16-23. She also indicated that among the conditions she wanted to rule out for purposes of a differential diagnosis was peptic ulcer disease. Natal Depo. 12:19-23. She indicated that she believed the plaintiff had gallbladder disease rather than peptic ulcer disease because peptic ulcer disease typically presents as epigastric pain (pain in the middle of the stomach) rather than the right upper-quadrant pain, which is indicative of gallbladder disease. Natal Depo. 11:16-13:7.

Dr. Natal testified that based on her observations, her plan of treatment for the plaintiff was to control the pain and nausea, to treat the gallbladder disease and to run some tests to rule out other possible causes of the pain. Natal Depo. 13:8-24. She prescribed Toradol for pain, Bentyl for nausea and Cipro for gallbladder disease. Natal Depo. 13:8-14:12.

Cipro is an antibiotic used to treat gallbladder disease because it helps with the inflammation and prevents infection. Natal Depo. 13:15-24. Cipro is not normally prescribed for the treatment of peptic ulcer disease or H. pylori bacteria. Natal Depo. 13:25-14:2, 26:7-16 (noting that Cipro is not indicated for peptic ulcer disease). Dr. Natal also testified that H. pylori

bacteria must be treated with two antibiotics at the same time because H. pylori has some resistance to clarithromycin. Natal Depo. 16:17-27:12 (noting that Clarithromycin and Amoxicillin are used to treat peptic ulcer disease or H. pylori bacteria, and that she did not prescribe Cipro to treat peptic ulcer disease or H. pylori bacteria).

On April 3, 2007, Dr. Natal ordered several lab tests including CBC sedimentation rate, urinalysis, comprehensive panel, lipid panel, liver enzyme and H. pylori. Natal Depo. 14:16-20. It takes approximately seven days for the results of the lab tests to come back to the BOP. Natal Depo. 28:11-15. Dr. Natal testified that she would not have treated Plaintiff for H. pylori without having the test results showing that he in fact had H. pylori bacteria. Natal Depo. 28:16-21.

Dr. Natal explained that H. pylori is a bacterium that typically grows in the stomach; that it is resistant to the acidity of the stomach, allowing it to live in the stomach; and that it could produce abdominal pain. Natal Depo. 14:21-15:1. While H. pylori bacteria do not cause gastric ulcers, they are one of the precipitants for gastric ulcers. Natal Depo. 15:2-5. Dr. Natal also testified that H. pylori does not cause an ulcer to rupture. Natal Depo. 30:3-23. As she explained, the bacterial infection caused by H. pylori produces inflammation in the mucosa (the stomach lining), and the inflammation causes cells in the mucosa to

die.  Once the mucosa is compromised, the high acidity of the stomach causes the ulceration in the stomach.  Natal Depo. 30:3-23.

Dr. Natal testified that her treatment of the plaintiff, as well as the outcome of that treatment, would have been the same if she saw him on March 27, 2007.  Natal Depo. 24:22-25:4, 25:22-26:3.  She also testified that the outcome would have been the same because the treatment for H. pylori takes two weeks to be effective, and a non-complicated ulcer needs four to six weeks to heal.  Natal Depo. 29:2-17.  The two weeks for treatment of H. pylori is in addition to the seven days it would have taken for Dr. Natal to get the lab results, and to determine whether the plaintiff in fact had H. pylori bacteria.

Thus, the defendant contends that, on the basis of Dr. Natal's deposition testimony, the plaintiff cannot establish that had Dr. Natal seen Plaintiff on March 27, 2007, instead of April 3, 2007, the plaintiff's ulcer would not have ruptured.  In fact, based on the time it takes the BOP to get the results of the lab work, it cannot be established that Dr. Natal would have known the plaintiff had H. pylori bacteria before April 3, 2007.  The defendant therefore asserts that the plaintiff has failed to produce evidence of medical causation based on the following: (1) Dr. Fiser expressly stated that he had no opinion regarding the proximate cause of the rupture of the plaintiff's ulcer; and (2) Dr. Natal's deposition testimony directly contradicts the plaintiff's theory of

causation.

The plaintiff contends that Dr. Natal's testimony, coupled with Dr. Fiser's testimony, establishes that the plaintiff was suffering from a peptic ulcer on March 27, 2007. However, neither physician treated the plaintiff on March 27, 2007, and neither testified that the plaintiff had peptic ulcer disease on March 27, 2007. The plaintiff relies on Dr. Fiser's statement that dull pain <u>can be</u> a symptom of peptic ulcer disease to conclude that he <u>was</u> suffering from peptic ulcer disease on March 27, 2007. This is mere conjecture on the plaintiff's part. Expert testimony must be stated to a reasonable degree of medical probability. <u>Univ. of Miss. Med. Ctr. v. Lanier</u>, 97 So.3d 1197, 1202 (Miss. 2012). "[I]f a physician cannot form an opinion with sufficient certainty as to make a medical judgment, neither can a jury use that information to reach a decision." <u>Id</u>. at 1203 (citation and internal quotation marks omitted). In other words, "proximate cause requires more than speculation, guesswork, conjecture or inferences." <u>Martin v. St. Dominic-Jackson Mem. Hosp.</u>, 90 So.3d 43, 50 (Miss. 2012).

Furthermore, even if the Court accepts the plaintiff's contention that he suffered from peptic ulcer disease on March 27, 2007, this does not establish that had he been seen by a physician on March 27, 2007, he would not have suffered a ruptured ulcer. The plaintiff asserts that Dr. Fiser's testimony coupled with that

of Dr. Natal establishes proximate cause between the prison staff's "failure to address Mr. Massey's symptoms" and "gastric rupture." However, the plaintiff fails to establish <u>how</u> the doctors' testimonies establish proximate cause.

Dr. Fiser testified that gnawing abdominal pain was one of several potential symptoms of peptic ulcer disease. Yet he also testified that by "gnawing abdominal pain" he meant "dull pain." Deposition of Dr. H. Gregory Fiser ("Fiser Depo.") 11:2-12:1. He further testified that one could have stomach pain, severe or otherwise, without having peptic ulcer disease. Fiser Depo. 24:25-25:5. He also testified that someone with peptic ulcer disease could "have any gamut of symptoms or no symptom at all." Fiser Depo. 12:3-5.

Moreover, whether or not the plaintiff had peptic ulcer disease, and whether or not the plaintiff's peptic ulcer ruptured, are not the critical issues in this case. The critical issue is whether anything the BOP did or failed to do proximately caused the plaintiff's peptic ulcer to rupture. See <u>Guile v. United States</u>, 422 F.3d 221, 227-28 (5th Cir. 2005)("Evidence of proximate cause must show that in the absence of the alleged breach the harm would not have occurred, and must state, describe or explain the connection between the breach and the harm in sufficient detail to support the expert's assertion of proximate cause." <u>See also</u> <u>Shirley v. McCraney</u>, 241 F.Supp.2d 677, 683 (S.D. Miss. 2001)

11

(granting motion for summary judgment where plaintiff failed to present expert testimony demonstrating that defendant's conduct, not plaintiff's original illness or injury, led to plaintiff's worsened condition). Dr. Fiser testified that he had no opinion as to whether any conduct on the part of any BOP medical providers proximately caused the plaintiff to suffer a ruptured gastric ulcer. Fiser Depo. 17:24-18:7.

The plaintiff also relies on Dr. Natal's testimony that she would have rendered the same treatment on March 27, 2007, as she did on April 3, 2007. However, this testimony does not create a genuine issue of material fact as to proximate cause. As Dr. Natal testified, the treatment she prescribed for the plaintiff was for gallbladder disease; furthermore, she would not have prescribed the medicine she did if she thought the plaintiff had peptic ulcer disease. Natal Depo. 13:8-14:12. There is no evidence that the treatment Dr. Natal prescribed on April 3, 2007, would have been sufficient to treat peptic ulcer disease (or would have prevented the plaintiff's ulcer from rupturing) had it been prescribed on March 27, 2007.

The plaintiff also contends that he was suffering from "a rupturing ulcer for seven days with no medical attention or treatment." But again, the plaintiff submits no evidence to support his contention. There is no evidence of record indicating when the plaintiff's peptic ulcer ruptured, or why it ruptured; nor

12

is there any medical testimony on this issue.

The plaintiff has produced no expert medical testimony to support his theory that BOP medical providers could have done something to prevent his peptic ulcer from rupturing had they treated him on March 27, 2007. See, e.g., Hollis v. United States, 323 F.3d 330, 338 (5th Cir. 2003)(noting that plaintiff could not establish that failure to conduct earlier testing was proximate cause of plaintiff's injury where there was no testimony regarding when the disease process began and at what stage it was). In this case, the only medical professional designated by the plaintiff who has offered an opinion on the issue, Dr. Natal, testified that the plaintiff would have had the same outcome even if he had been treated on March 27, 2007.

Without expert testimony (provided to a reasonable degree of medical probability) that the plaintiff's outcome would have been different had he been treated on March 27, 2007, the plaintiff has failed to demonstrate a genuine issue of material fact regarding a causal link between the alleged breach of the standard of care and the plaintiff's harm. Therefore, there is no genuine dispute of material fact on the issue of proximate cause, and the United States is entitled to judgment as a matter of law under Rule 56.

Accordingly,

IT IS HEREBY ORDERED that the defendant United States of America's Motion for Summary Judgment (Renewed) **(docket entry 56)**

is GRANTED.

A final judgment in favor of the defendant, dismissing this action with prejudice, shall be entered of even date herewith.

SO ORDERED, this the 19th day of August, 2013.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE